IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL KING WARREN, JR., DV-4642, )
    Plaintiff, )
     )
    v. ) Civil Action No. 06-504
     )
COMMONWEALTH OF )
PENNSYLVANIA, et al., )
    Defendants. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment (Docket No. 76) be denied as moot; that the Defendants' Motion for Summary Judgment (Docket No. 73) be granted and that judgment be entered accordingly.

II. Report:

Presently before the Court for disposition are cross motions for summary judgment.

Daniel King Warren, Jr., an inmate at the State Correctional Institution at Fayette has presented a civil rights complaint, as amended. Warren's complaint (Docket No.1) and amended complaint (Docket No.26) present unintelligible ramblings from which it is impossible to discern that about which he complains. However, in paragraph 13 of the complaint he alleges improper confiscation of his religious books, and in his May 20, 2007 "Narrative Written Statement" (Docket No.67), it would appear that he is seeking to challenge institutional policies which restrict the number of publications which an inmate can possess in his cell. Specifically, it

1

appears that he is alleging that he was permitted to have various publications in his cell; that on August 12, 2005, those materials were removed and he was advised that they would be returned within ten (10) days; that the items were not returned to him nor was he compensated for them; that on September 6, 2005, two books were taken from the mail without his consent; that on November 3, 2005, fifty-seven (57) book were taken from him on the basis that their number exceeded the ten book maximum allowed in an inmate's cell, and that these books included his Koran, a copy of the U.C.C. and a long list of books most of which appear to have some Muslim bearing.[1] These facts are said to state a cause of action under various laws, but primarily it appears that the plaintiff is setting forth an alleged violation of 42 U.S.C. 1983 and invoking this Court's jurisdiction pursuant to Sections 1331 and 1343 of Title 28, United States Code. Named as defendants and movants here are various Pennsylvania correctional officials.

It is provided in 42 U.S.C. §1983 that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In support of their motion, the defendants contend that the plaintiff has failed to exhaust the available administrative remedies regarding his claims of confiscation of his books, retaliation against him for engaging in litigation, transferring his place of confinement, fabricating misconduct reports, a denial of a "republican" form of government, the inability of the defendants to enact "laws" regarding prison operations, the defendants acting outside their

---

[1] See: Exhibit 8 to the plaintiff's pretrial narrative.

areas of control, and violations of his protected privileges, immunities and petition rights.

In support of their motion, the defendants have submitted the declaration of Donald Williamson, the Chief of transfer/records for the Department of Corrections. In his declaration, Williamson explains that an inmate transfer is effectuated by polling appropriate corrections staff members; that out of concern for institutional security, this information is not shared with inmates; that he has reviewed the relevant documents concerning Warren who was housed at the State Correctional Institution- Greene from December 14, 2004 through September 11, 2006 when he was transferred to State Correctional Institution-Fayette; that the request for the transfer was initiated by Greene personnel and that the transfer was effectuated because the plaintiff was involved in inappropriate UCC activities and had obtained personal information regarding institutional personnel.[2] We also observe that absent improper motivation, inmates have no right to be housed within any particular institution. Asquith v. Department of Corrections, 186 F.3d 407 (3d Cir.1999).

In addition, a copy of Administrative Directive 803 regarding inmate mail and incoming publications has been provided.[3] Included in that policy is a limitation on matters which an inmate may maintain in his cell and which permits possession of three newspapers, ten magazines and ten books.[4]

Also submitted is the declaration of Cindy Watson, who is a grievance review officer for

---

[2] See: Exhibit A to the defendants concise statement of facts.

[3] See: Exhibit D to defendants' concise statement of facts.

[4] Id. At p.19.

the Department of Corrections.[5] In her declaration, Watson outlines the grievance procedure which provides for the filing of the initial grievance; review by the Superintendent of the institution and finally an appeal to the Secretary of Corrections and observes that in order the exhaust the available administrative remedies, all three steps must be taken. While noting that the plaintiff had filed a number of grievances while incarcerated, he had exhausted his administrative appeals in only two of them; grievance number 135550 (Exhibit I) in which he challenged the seizure of religious books from his cell and grievance number 139440 (Exhibit H) in which he challenged the retention of an incoming publication which contained a promotional disk.[6]

The Prison Litigation Reform Act provides in 42 U.S.C. § 1997(e)(a) that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

See: Santana v. United States, 98 F.3d 752 (3d Cir. 1996). Pennsylvania provides such a mechanism.[7] This requirement also has a procedural default component. Spruill v. Gillis, 372 F.3d 218 (3d Cir.2004). Thus, it would appear that these two grievances are the only ones properly before this Court for review. In his response to the motion, Warren does not contest the defendants' representation and in fact appears to endorse it but seeks to evade the requirement by

---

[5] See: Exhibit F to the defendants' concise statement of facts.

[6] Watson also sets forth that the plaintiff filed a number of grievances, 141118 regarding opening his outgoing mail; 125630(Exhibit D), 141119 (Exhibit E), 125627 and 125628 but that in none of these did he exhaust his administrative remedies. She also observes that if the plaintiff challenged his transfer he never exhausted his administrative remedies on this claim

[7] See: Administrative Directive 804.

indicating that this is not a § 1983 action.[8]

In grievance 13440, Warren challenged the removal of books from his cell including those of a religious nature. In response to the initial complaint, the plaintiff was advised:

> In stating you do not currently have any religious books in your cell, you fail to mention that staff gave you the opportunity to choose materials and you refused to do so, in both accepting and making disposition of those over the limit.
>
> Policy is very clear, particularly citing the DC-ADM 803 ... which states 10 books ... unless approved for additional books...
>
> It is the policy of the Department of Corrections to accommodate inmates' religious beliefs consistent with the security needs and orderly administrative of the facility by providing for the orderly management of religious opportunities for all inmates under the Department's jurisdiction. An option still available to you, which appears you have not attempted prior to writing this grievance, is submitting a DC-52 Religious Accommodation Request regarding possessing excess religious books. This opportunity still exists to request religious book(s) in you cell, including your Quran, and still allow you to maintain those excess materials in disputed property pending final disposition.[9]

Finally, at the highest administrative level, the plaintiff was again informed:

> You have failed to provide sufficient evidence that DOC staff is preventing you from having any of your religious books in your cell. Review of the record indicates that you were given the opportunity to select materials you wished to keep in your cell, but you refused to do so. Obviously it is your actions which are preventing you from having the ten books, including your Quran, that you are permitted to have in your possession. DC-ADM 803 clearly outlines the fact that only ten books are permitted in your cell. There are no plans at this time to change the policy. However ... you do have the option to submit a DC-52 Religious Accommodations Request regarding your concern.[10]

Thus, the record appears to conclusively demonstrate that the plaintiff refused to select

---

[8] Thus it would appear that any other allegations which the plaintiff might be raising here are barred.

[9] See: Exhibit I to the defendants' concise statement of facts.

[10] Id.

which books he desired to maintain in his cell so as to comport with institutional requirements and for this reason his claim is meritless. However, it appears that the plaintiff is also seeking to challenge the authority of institutional personnel to adopt limitations on matters which an inmate may possess in his cell.

> In <u>Beard v. Banks</u>, 548 U.S.    , 126 S.Ct. 2572 (2006), the Court observed:
>
> *Turner v. Safely*, 482 U.S. 78 (1987), and *Overton v. Bazzetta*, 539 U.S. 126 (2003), contain the basic substantive legal standards governing this case. This Court recognized in *Turner* that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment... But at the same time, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere... As *Overton* ... pointed out, courts owe "substantial deference to the professional judgment of prison administrators." ... And *Turner* reconciled these principles by holding that restrictive prison regulations are permissilbe if they are "'reasonably related' to legitimate penological interests,"...

126 S.Ct. at 2577-2578.

The applicable limitations are imposed by Directive 803(VI)(F )(6). As explained in the declaration of John Kingston who is charged with cell security,

> 3. DC-ADM 803(VI)(F)(6)(a)(3) serves several important purposes, including facilitation the ease of cell searches and hindering the concealment of contraband. Excessive amounts of paper products are restrict to the Inmates use of a record keeping box which allows the storage of legal material and or other important papers deemed necessary for retention by the Inmate. The policy also serves to promote safety by preventing the fire hazard posed by the accumulation of excessive amounts of flammable materials throughout the facility
>
> 4. Pursuant to DC-ADM 803(VI)(D)(1)(g) inmates access to certain materials related to the Uniform Commercial Code (UCC) is limited. Also pursuant to this section, an inmate may file a grievance advising the Grievance coordinator of his legitimate purpose for possession of the UCC related materials.
>
> 5. This limitation is for purposes of the safety and security of the institution. DC-ADM 803(VI)(D)(1)(g) was enacted because inmates had been discovered to be using the UCC to file fraudulent or bogus liens against DOC staff. In addition,

>inmates have been known to purportedly copyright their own name utilizing materials not banned by this policy. These inmates would then threaten DOC staff with suit simply based on staff's use of the inmate's name. This subsection frustrates inmates' ability to engage in this unlawful activity.[11]

Thus, it appears that the restriction on both the volume of items which may be retained in an inmate's cell and the specific restriction on possession of the U.C.C. are designed to accomplish legitimate penological security concerns and are matters in which courts should grant "substantial deference to the professional judgment of prison administrators." Thus, the issue which the plaintiff raises here concerning the legality of the imposition of these reasonable limitations is meritless.

In grievance 139440, the plaintiff sought to challenge the retention of an incoming publication which contained a CD he had not requested. Specifically in this regard, the plaintiff complained that a book which had been ordered for him by a family member was delivered to the prison at which time it was discovered that the book contained an unsolicited CD "a sample of a new book coming out". Warren further indicated in his grievance, "I did not request; order, or pay for these samples."[12] Since this enclosure was unsolicited and unexpected, it is difficult to comprehend how the plaintiff could argue that he has suffered a deprivation. However, we note that in Hudson v. Palmer, 468 U.S. 517 (1984), the Court held that so long as pre- or post-deprivations remedies exist, due process has not been violated. Pennsylvania provides a mechanism for raising such claims.

Finally, in his motion for summary judgment, the plaintiff alleges entitlement on the basis

---

[11] See: Exhibit J to the defendamts' concise statements of facts.

[12] See: Exhibit H to the defendants' concise statement of facts.

of the failure of the defendants to file their pretrial narrative statement. This is a moot issue since the defendants have opted to file the instant motion for summary judgment instead.

Summary judgment is appropriate where there are no material issue of fact and the movant is entitled to judgment as a matter of law. <u>Biener v. Calio</u>, 361 F.3d 206 (3d Cir.2004). In opposing a motion for summary judgment, a party cannot rest on mere reassertions of the matter raised in the complaint but must demonstrate by record evidence that material issues of fact exist for resolution at trial. <u>Orsetti v. New Jersey</u>, 71 F.3d 480 (3d Cir.1995).

Despite being provided with an opportunity to respond to the defendants' motion, the plaintiff has not filed any viable opposition. Furthermore, an examination of the record reveals that there are no material issue of fact in dispute and as a matter of law, the plaintiff is not entitled to relief. Accordingly, it is recommended that the plaintiff's motion for summary judgment be denied, and that the defendants' motion for summary judgment be granted and that judgment be entered accordingly.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: May 17, 2007                               United States Magistrate Judge