IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL KING WARREN, JR., DV-4642,<br>Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-504 |
| | ) | |
| COMMONWEALTH OF<br>PENNSYLVANIA, et al.,<br>Defendants. | ) | |

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the Plaintiff's Motion for Summary Judgment (Docket No.117) be denied; that the Defendants' Motion for Summary Judgment (Docket No.114) be granted and that judgment be entered accordingly.

II. Report:

Presently before the Court for disposition are cross motions for summary judgment.

Daniel King Warren, Jr., an inmate at the State Correctional Institution at Fayette has presented a civil rights complaint, as amended. Warren's complaint (Docket No.1) and amended complaint (Docket No.26) present unintelligible ramblings from which it is impossible to discern that about which he complains. However, in paragraph 13 of the complaint he alleges improper confiscation of his religious books, and in his May 20, 2007 "Narrative Written Statement" (Docket No.67), it would appear that he is seeking to challenge institutional policies which restrict the number of publications which an inmate can possess in his cell. Specifically, it

appears that he is alleging that he was permitted to have various publications in his cell; that on August 12, 2005, those materials were removed and he was advised that they would be returned within ten (10) days; that the items were not returned to him nor was he compensated for them; that on September 6, 2005, two books were taken from the mail without his consent; that on November 3, 2005, fifty-seven (57) books were taken from him on the basis that their number exceeded the ten book maximum allowed in an inmate's cell, and that these books included his Koran, a copy of the U.C.C. and a long list of books most of which appear to have some Islamic bearing.[1] These facts are said to state a cause of action under various laws, but primarily it appears that the plaintiff is setting forth an alleged violation of 42 U.S.C. 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. 2000cc et.seq., and invoking this Court's jurisdiction pursuant to Sections 1331 and 1343 of Title 28, United States Code. Named as defendants and movants here are various Pennsylvania correctional officials.

In a report and recommendation filed on May 17, 2007 and adopted by the Court on June 6, 2007, judgment was entered against the plaintiff and in favor of the defendants. Plaintiff then filed a timely appeal to the United States Court of Appeals for the Third Circuit which Court on August 12, 2008, affirmed in part, reversed in part and remanded for further consideration of "the First amendment and RLUIP claims." Warren v. Pennsylvania, 2008 WL 3318994. Accordingly, further discovery was permitted and the parties have again submitted cross motions for summary judgment.

It is provided in 42 U.S.C. §1983 that:

Every person who, under color of any statute, ordinance, regulation, custom, or

[1] See: Exhibit 8 to the plaintiff's pretrial narrative.

usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In addition, RLUIPA provides in 42 U.S.C. 2000cc-1(a) that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(1) is in furtherance of a compelling government interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

In Washington v. Klem. 497 F.3d 272, 274 (3d Cir.2007), the Court held that,

[U]nder the Religious Land Use and Institutionalized Persons Act of 2000... the Pennsylvania Department of Corrections' (DOC's) restriction on inmates that they possess in their cells only ten books at a time substantially burdens [the inmate's] religious exercise ... Because the DOC is unable to show that its ten-book policy is the least restrictive means to further its compelling governmental interest in the safety and health of prisoners and prison employees...

The Court in Washington examined the various interpretations of "substantial burden" and concluded that :

a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates verses abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

497 F.3d at 280.

The Court, however, did observe that as applied to Washington, the DOC limitation was a substantial burden because his religious belief, the sincerity of which was not challenged,

required that he read four new religious books a day. And, that on the facts of that particular case, the regulation substantially burdened Washington's religious practices.[2]

Partly as a result of this decision, rendered subsequent to our earlier decision in this case, the DOC amended its regulations effective April 28, 2008, eliminating the ten book maximum and providing that:

> 6.a. Each inmate in general population may retain in his/her cell only that quantity of publications that will fit within his/her allotted storage space along with any personal property of that inmate[3]

That is, under the now existing regulation, there is no limit to the number of books an inmate may retain in his cell so long as that material conforms to the general guidelines on the amount of material permitted in a cell. That this policy is now in effect at the DOC facilities is supported by the Declaration of Rev. Ulrich Klemm and Steven Glunt, the security chief for the DOC [4]. Since under the new regulation the plaintiff's requested relief has been granted, his pursuit of injunctive relief here, is moot. Sutton v. Rasheed, 323 F.3d 236 (3d Cir.2003).

However, even under the ten book limitation in effect when this suit was filed, an inmate still had the right to request that he be permitted to retain more than ten books under DC-52 which is a request for religious accommodation.[5] In addition, the facilities provide Islamic

---

[2] We note that Washington's religion was "Pan-Afrikanism" and not Islam.497 F.3d at 275.

[3] See Exhibit D to the defendants' concise statement of material facts not in dispute at p.3-8

[4] See: Exhibits B and C to the defendants' concise statement of material facts not in dispute.

[5] See: Exhibit B at ¶13, and Exhibit C to the defendants' concise statement of material facts not in dispute at ¶13. We also observe that as the Court of Appeals noted, Warren never

inmates access to services, religious studies, religious classes, access to a religious advisor, religious counseling, accommodation for dietary restrictions, as well as relevant library religious sources, etc.[6]

Additionally, in his declaration, Imam Rasheed, who is the Islamic Chaplain at the State Correctional Institution at Camp Hill, and has served at other DOC facilities states:

> There is no requirement that a Muslim read a particular number of books or texts in a particular time period; rather, he must simply be able to educate himself in the faith, to the extent possible based on his level of literacy and his situation.
>
> Islam does not require that an adherent have immediate access to an unlimited number of texts in one's home or, in the case of a prisoner, cell. Access to ten books in one's prison cell at one time is sufficient to permit an Islamic inmate to fulfill his religious obligations, particularly in light of the alternative manners available for that inmate to exercise his faith, including his access to Islamic texts in the prison library...
>
> To the extent the former ten-book limit placed any burden on an Islamic inmate's ability to practice his faith, it was exceedingly minimal, because, *inter alia*, a) the inmate could keep ten books in his cell at any given time; b) he could exchange those books for those in storage; c) he could access Islamic texts from the library; and d) he had access to other religious programs, including weekly services. This is because of the fact that there is no requirement that a Muslim read a particular number of books in a particular time period.
>
> The ten-book limit, when it was in effect, did not have the effect of forcing a Muslim inmate to choose between compliance with that prison rule and practicing his faith. An inmate's compliance with the ten-book limit does not in any fashion violate any precept of Islam.
>
> The ten-book limit, when it was in effect, did not have the effect of placing any pressure on a Muslim inmate to violate his beliefs, nothing about the compliance ten-book limit runs counter to any precept of Islam.

---

requested such an accommodation.

[6] See: Exhibit B to the defendants' statement of material issues of fact not in dispute at ¶¶ 5-12.

> A Muslim inmate can both comply with the ten-book limit and fulfill all the requirements of Islam. There is no contradiction.[7]

Appended to his concise statements of material facts, Warren has appended as Exhibit 4 a statement from Ibraheem Tanko, Imam, Islamic Coordinator at State Correctional Institution-Fayette in which he sets forth:

> This is to verify that Muslim inmates need to have more than 10 books in order for them to have the correct and proper understanding and knowledge of their religion... Therefore, *it may be of tremendous help* in their religion and spiritual growth to allow inmates of Islamic faith to have more than 10 books in order to properly learn their religion.(emphasis added).

In this context, we examine the two claims remanded by the Court of Appeals, namely whether the then extant regulation i.e., the ten book limitation, violated either the plaintiff's First Amendment or RLUIP rights.

The First Amendment provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof..." This provision is applicable to the states through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296 (1940). Specifically, as relevant here, inmates do not suffer a deprivation of all their rights as a result of their inmate status. O'Lone v. Shabazz, 482 U.S. 342 (1987). However, those rights must be balanced against legitimate penological interests. Turner v. Safley, 482 U.S. 78 (1987).

When called upon to review the ten book limitation, the Court of Appeals in Washington, supra. concluded that it served no valid penological purpose. However, the uncontradicted submissions made here by Imam Rasheed, demonstrates that there is no requirement that a

[7] See: Exhibit E to the defendants' statement of material issues of fact not in dispute at ¶¶ 3-9. However, in his declaration at ¶¶ 7-8, Warren disputes the conclusion of the Imam that ten books are more than adequate.

Muslim read any particular number of books in order to practice his religion, and that access to ten books at a time was adequate. Indeed, the plaintiff's Imam opined that while inmates need overall access to more than ten books to practice their religion, it would be helpful, but is not required, that they possess more than ten books at any one time. As with many other matters, while there might be more desirable practices, the fact remains, and is uncontradicted that possession of ten books at a time was adequate to pursue the plaintiff's religious practice. Additionally, as has been made clear by the submissions here, even prior to the elimination of the ten book limitation, inmates could always request an exemption from the regulation for religious practices. Furthermore, while the ten book limitation was in place, inmate could also request the right to exchange books which they had for books which were excluded from their cells.

Thus, there is nothing to suggest that Warren was prevented from exercising his First Amendment rights as a result of the ten book limitation. As such, the inevitable conclusion is that his rights under that Amendment were not abridged.

The plaintiff also contends that his rights under the RLUIP were abridged.[8]

Section 3 of RLUIPA, 42 U.S.C. 2000cc-1 provides that

> no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> (1) is in furtherance of a compelling governmental interest; and

---

[8] We note that recently, a member of this court concluded that since monetary damages are barred against persons in their individual or official capacities [as well as against government entities] under RLUIPA the only proper remedy is injunctive relief. See, Sharp v. Johnson, 2008 WL 941686. However, in Smith v. Allen, 502 F.3d 1255 (11th Cir.2007) it was noted that an award of monetary damages was an appropriate remedy.

> (2) is the least restrictive means of furthering that compelling governmental interest...
>
> Section 4, 42 U.S.C. 2000cc-2 provides:
>
> (b) If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise clause or a violation section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion.

A substantial burden exists where, as noted above, a inmate is forced to choose between following the dictates of his religion or suffering institutional consequences, or is forced to modify his behavior to the detriment to his religious beliefs. Washington, supra. In the present case, it is uncontradicted that despite his desire to the contrary, at the time this suit was commenced, there was nothing in the plaintiff's religion that required him to have more than ten books in his cell; that at that time he could have requested a religious accommodation to permit him to retain in excess of that number of books in his cell as any one time and failed to do so, and that the prison provided many avenues through which he could pursue his religion. Although the Third Circuit determined in Washington, that the ten book limitation had no significant bearing on institutional safety, since this limitation had no application to the plaintiff's practice of his religion, there is no need to determine whether or not Turner is applicable, since as applied to Warren it did not infringe on his rights. Additionally, the revision of the regulation makes any future application of the limitation a moot issue.

Summary judgment is appropriate where there are no material issue of fact and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004). In opposing a motion for summary judgment, a party cannot rest on mere reassertions of the matter

raised in the complaint but must demonstrate by record evidence that material issues of fact exist for resolution at trial. Marten v. Godwin, 499 F.3d 290 (3d Cir.2007). No such showing has been made here, and it appears as a matter of law that the defendants did not interfere with the plaintiff's opportunity to practice his religion and that the defendants are entitled to have their motion granted.

Accordingly, it is recommended that the plaintiff's motion for summary judgment be denied; that the defendants' motion for summary judgment be granted, and that judgment be entered accordingly.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
United States Magistrate Judge

Entered: March 17, 2009